UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Antoine Marquet Clemons, | Case No. 22-cv-1198 (NEB/TNL) |
| Petitioner, | |
| v. | REPORT & RECOMMENDATION |
| FPC-Duluth Warden B. Eischen, | |
| Respondent. | |

Antoine Marquet Clemons, Reg. No. 14944-030, FPC-Duluth, P.O. Box 1000, Duluth, MN 55814 (pro se Petitioner);[1] and

Ana H. Voss and Chad A. Blumenfield, Assistant United States Attorneys, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Respondent).

---

[1] As the Court previously noted and is discussed further herein, Petitioner was transferred after the Petition was filed and is now being supervised by the Federal Bureau of Prisons' ("BOP") RRM Kansas City field office in Kansas City, Kansas. *Find an inmate.*, Fed. Bureau of Prisons, http://www.bop.gov/inmateloc/; *RRM Kansas City*, Fed. Bureau of Prisons, https://www.bop.gov/locations/ccm/ckc/. ECF No. 13 at 3-4 & n.1. Based on Respondent FPC-Duluth Warden B. Eischen's Supplemental Response, Petitioner is presently on home confinement. Resp't's Suppl. Resp., ECF No. 14 at 2; Decl. of Nicole Finckler ¶ 6, ECF No. 15; Ex. B to Finckler Decl., ECF No. 15-2 at 1. It is Petitioner's "responsibility to keep this Court properly apprised of his current address so that he may receive correspondence from this Court." *Jackson v. Brown*, No. 18-cv-2567 (WMW/LIB), 2020 WL 1236708, at *3 (D. Minn. Jan. 3, 2020), *report and recommendation adopted*, 2020 WL 1236562 (D. Minn. Mar. 13, 2020); *see also Hogquist v. Anoka Cty. Dist. Courts*, No. 19-cv-2471 (WMW/KMM), 2019 WL 6874709, at *1 n.1 (D. Minn. 17, 2019) ("It is a petitioner's responsibility to provide updated contact information to ensure timely receipt of case-related communications."). The Court will, however, direct that the Clerk of Court send a copy of this Report & Recommendation to Petitioner in care of the RRM Kansas City field office in an effort to reach him:

Antoine Clemons, Reg. No. 14944-030
c/o RRM Kansas City,
Residential Reentry Office
400 State Ave., Suite 800
Kansas City, KS 66101

Additionally, "[i]t has long been established that once a court acquires jurisdiction with the initial filing of a habeas corpus petition against a petitioner's immediate custodian, the subsequent transfer of the petitioner and accompanying change in custody does not divest the court of that jurisdiction." *Gianni v. Fed. Bureau of Prisons*, No. 09-cv-1166 (MJD/JSM), 2010 WL 1427318, at *5 n.6 (D. Minn. Feb. 12, 2010), *adopting report and recommendation*, 2010 WL 1427320 (D. Minn. Apr. 9, 2010), *aff'd*, 405 Fed. App'x 96 (8th Cir. 2010); *accord Griffin v. Ebbert*, 751 F.3d 288, 290 (5th Cir. 2014) ("Jurisdiction attached on that initial filing for habeas corpus relief, and it was not destroyed by the transfer of petitioner and accompanying custodial change." (citing cases)).

## I. INTRODUCTION

This matter comes before the Court on pro se Petitioner Antoine Marquet Clemons's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition"), ECF No. 1. This matter has been referred to the undersigned for a report and recommendation to the district court, the Honorable Nancy E. Brasel, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Petition be **DENIED AS MOOT** and this matter be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

## II. BACKGROUND

Petitioner asserts that the BOP has not properly applied time credits earned under the First Step Act to his sentence.[2]

### A. Time Credits Under the First Step Act

In brief, the First Step Act of 2018 ("First Step Act"), Pub. L. 115-391, 132 Stat. 5194 (2018), "offers prisoners an opportunity to earn [t]ime [c]redits applicable to their periods of residential reentry center placement, home confinement or supervised release, by participating in certain evidence-based recidivism reduction . . . programs and productive activities." *Salter v. Fikes*, No. 20-cv-2253 (ECT/ECW), 2021 WL 2365041, at *1 (D. Minn. May 5, 2021) (quotation omitted), *report and recommendation accepted*,

---

[2] To the extent Petitioner seeks an order from the Court declaring that he "*does* qualify for [First Step Act] credits that may be applied to reduce his sentence," Pet., ECF No. 1 at 8, Respondent does not dispute that Petitioner is eligible to earn time credits under the First Step Act. Resp't's Resp., ECF No. 7 at 10; Decl. of Kyja Winger ¶ 4, ECF No. 9.

2

2021 WL 2354934 (D. Minn. June 9, 2021); *see also, e.g.*, *Mills v. Starr*, No. 21-cv-1335 (SRN/BRT), 2022 WL 4084178, at *1, 4 (D. Minn. Aug. 17, 2022), *report and recommendation adopted*, 2022 WL 4080750 (D. Minn. Sept. 6, 2022).

"Time credits earned . . . shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). "[A]n inmate is only eligible to have their time credits applied if they meet certain criteria under 18 U.S.C. § 3624(g)." *Mills*, 2022 WL 4084178, at *4. "That criteria includes having accumulated time credits in an amount that is equal to the remainder of [the inmate's] imposed term of imprisonment . . . ." *Id.*; *see also* 18 U.S.C. § 3624(g)(1)(A) (eligibility requirement that prisoner "has earned time credits . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment"); 28 C.F.R. § 523.44(b)(1) (time credits may be applied toward prerelease custody or early transfer to supervise release if eligible inmate has "[e]arned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment"). "In other words, the First Step Act provides that a prisoner is eligible to have earned time credits applied for supervised release or prelease custody only when []he has earned time credits that equal the remainder of h[is] sentence." *Mills*, 2022 WL 4084178, at *4; *see Adkins v. Engleman*, No. CV 22-1988 JLS (MRW), 2022 WL 14966123, at *2 (C.D. Cal. Sept. 8, 2022) ("Federal courts around the country read Section 3624(g)(1)(A) to mean that the BOP is permitted to apply time credits *only* once an inmate has earned enough that equal the remainder of her sentence." (quotation omitted)), *report and recommendation accepted*, 2022 WL 15116425 (C.D. Cal. Oct. 24, 2022); *see also, e.g.*, *Lallave v. Martinez*, 609 F. Supp. 3d 164, 183 (E.D. N.Y. 2022); *Turner v. Heisner*,

3

No. CV 22-00178-PHX-JAT (ESW), 2022 WL 2195348, at *3 (D. Ariz. May 16, 2022), *report and recommendation accepted sub nom.*, Turner v. Cole, 2022 WL 2192212 (D. Ariz. June 17, 2022); *Milchin v. Warden*, No. 3:22-cv-195 (KAD), 2022 WL 1658836, at *3 (D. Conn. May 25, 2022); *cf. Mark v. Birkholz*, No. 21-cv-1418 (KMM/DTS), 2022 WL 11321123, at *1-2 (D. Minn. Aug. 4, 2022), *dismissed as moot*, 2022 WL 11227141 (D. Minn. Oct. 19, 2022).

Moreover, if the prisoner's sentence includes "a requirement that the prisoner be placed on a term of supervised release after imprisonment . . . , [the BOP] may transfer the prisoner to begin any such term of supervised release at an earlier date, *not to exceed 12 months*, based on the application of time credits." 18 U.S.C. § 3624(g)(3) (emphasis added); *see also* 28 C.F.R. § 523.44(d)(3) ("The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred."). Thus, "[e]arly transfer to supervised release effectively reduces an inmate's sentence by, at max, one year." *Mills*, 2022 WL 4084178, at *4; *see also, e.g.*, *Roberts v. Cox*, No. 4:20-CV-04187-KES, 2022 WL 742489, at *2 (D. S.D. Mar. 11, 2022) ("Further, the BOP cannot grant an inmate more than twelve months of supervised release for earned time credits under the First Step Act." (citing 18 U.S.C. § 3624(g)(3))).

B. **Petitioner's Sentence & Initial Response**

Petitioner is serving a 151-month term of imprisonment. Winger Decl. ¶¶ 2-3; Ex. A. to Winger Decl., ECF No. 9-1 at 2-3; Resp't's Resp., ECF No. 7 at 1. His sentence also includes a 3-year term of supervised release. Ex. A to Winger Decl., ECF No. 9-1 at 2.

4

When responding to the Petition, Respondent noted that Petitioner had "a projected release date of May 22, 2024, via early release under 18 U.S.C. § 3261(e) for successful completion of the BOP's Residential Drug Abuse Program ['RDAP']." Resp't's Resp., ECF No. 7 at 1-2. Among other things, Respondent also argued that any request by Petitioner to have time credits earned under the First Step Act immediately applied to his sentence would be premature as, at the time of the Response, the time credits Petitioner had earned did "not equal the remainder of his term of imprisonment." Resp't's Resp., ECF No. 7 at 17.

### C. Supplemental Response

At the time the Petition was filed, Petitioner was serving his sentence at a federal prison camp in Duluth, Minnesota. Pet., ECF No. 1 at 1; Winger Decl. ¶ 2; Resp't's Resp., ECF No. 7 at 1. Based on publicly available information through the BOP's website, it appeared that Petitioner had since been transferred and was now being supervised by the Residential Reentry Management field office in Kansas City, Kansas. *Find an inmate.*, Fed. Bureau of Prisons, http://www.bop.gov/inmateloc/; *RRM Kansas City*, Fed. Bureau of Prisons, https://www.bop.gov/locations/ccm/ckc/. It was not clear when this occurred and whether Petitioner was transferred to a residential reentry center or transitioned to home confinement under the supervision of the RRM Kansas City field office. Further, the BOP's website indicated that Petitioner's projected release date was now June 29, 2023. In light of these developments, the Court ordered Respondent to "file a supplemental response explaining Petitioner's current custody status and any effect it has on the outcome of his Petition." ECF No. 13 at 4.

In the Supplemental Response, Respondent explains that, "[i]n February 2023, the

BOP determined that in order for inmates to apply [First Step Act time credits] toward an early release, they merely needed to currently have a Low or Minimum PATTERN score, rather than the last two consecutive assessments at a Low or Minimum."[3] Resp't's Suppl. Resp., ECF No. 14 at 1-2 (citations omitted); *see also* Finckler Decl. ¶ 4. Because "of this policy change," Respondent states that "[Petitioner] became immediately eligible to apply his 365 days of [First Step Act time credits] toward an early release." Resp't's Suppl. Resp., ECF No. 14 at 2.

### D. Effect of RDAP

Significantly, as noted above, Petitioner is participating in the RDAP. Resp't's Resp., ECF No. 7 at 10; Winger Decl. ¶¶ 3, 9; *see also* Ex. A to Winger Decl., ECF No. 9-1 at 2; Ex. E to Winger Decl., ECF No. 9-5 at 1. Under 18 U.S.C. § 3621(e)(2), "a federal prisoner's sentence may be reduced by up to one year, if—in the judgment of the BOP—he successfully completes residential substance abuse treatment." *Korf v. Rardin*, No. 23-

---

[3] In a letter, which the Court has construed as Petitioner's reply, Petitioner asserts that the BOP placed him in the wrong risk-level category following his April 20, 2022 PATTERN assessment. Petitioner asserts that, based on his score, he should have been placed in the Low category, rather than the Medium category. The understandable confusion here appears born out of the timing of BOP's transition to "revised PATTERN version 1.3," which included "new 'cut points' . . . for PATTERN's risk level categories under the 'general tool,'" and Petitioner's assessment on the apparent cusp of the transition. U.S. Dep't of Justice, Office of the Attorney Gen., *First Step Act Annual Report*, at 6 (Apr. 2023) [hereinafter 2023 Annual Report], *available at* https://www.ojp.gov/first-step-act-annual-report-april-2023. The coming of Pattern 1.3 was discussed in the First Step Act Annual Report in 2022. U.S. Dep't of Justice, Office of the Attorney Gen., *First Step Act Annual Report*, at 5, 14-15 (Apr. 2022) [hereinafter 2022 Annual Report], *available at* https://www.ojp.gov/first-step-act-annual-report-april-2022. The BOP's shift to PATTERN 1.3 appears to have occurred in May 2022. 2023 Annual Report at 16 ("On May 5, 2022, the BOP shifted to using PATTERN 1.3 and the revised cut points for the general tool, as explained above."). *But see* U.S. Dep't of Justice, Office of Justice Programs, Nat'l Inst. of Justice, *2022 Review & Revalidation of the First Step Act Risk Assessment Tool*, at 5 (Mar. 2023) ("The new version, PATTERN version 1.3, was formally adopted in April 2022." (citation omitted)), *available at* https://www.ojp.gov/pdffiles1/nij/305720.pdf.

At the time of the Response, Petitioner's most recent general PATTERN score was 37 based on the April 20, 2022 assessment. Exs. to Pet'r's Reply, ECF No. 11-1 at 1; *see Winger Decl.* ¶ 5; Ex. B to Winger Decl., ECF No. 9-2 at 1. While Petitioner is correct that a score of 37 would place him in the Low category under PATTERN 1.3's general tool, Exs. to Pet'r's Reply, ECF No. 11-1 at 3; 2022 Annual Report at 15, the assessment in question took place before the shift to PATTERN 1.3 and was scored using PATTERN 1.2, Exs. to Pet't'r's Reply, ECF No. 11-1 at 1.

6

cv-196 (JWB/DTS), 2023 WL 2899016, at *2 (D. Minn. Mar. 13, 2023) (citing 18 U.S.C. § 3621(e)(2)(A)-(B)), *report and recommendation accepted*, 2023 WL 2898631 (D. Minn. Apr. 11, 2023). The RDAP consists of three components: (1) a unit-based component "in a treatment unit set apart from the general prison population, lasting "at least six months"; (2) follow-up services, time permitting, "between completion of the unit-based component of the RDAP and transfer to a community-based program"; and (3) community-treatment services. 28 C.F.R. § 550.53(a); *see also Psychology Treatment Programs*, BOP Program Statement 5330.11, CN-1, *available at* https://www.bop.gov/policy/progstat/5330.11.pdf. An inmate "must complete the [community treatment services] to have successfully completed RDAP and receive incentives." 28 C.F.R. § 550.53(a)(3); *see also* 28 C.F.R. § 550.56(a); *Psychology Treatment Programs*, BOP Program Statement 5330.11, CN-1. "If inmates refuse or fail to complete [community treatment services], they fail RDAP and are disqualified for any additional incentives." 28 C.F.R. § 550.56(a); *see also Psychology Treatment Programs*, BOP Program Statement 5330.11, CN-1. To be eligible for § 3621(e)'s maximum one-year early release, an inmate must "[s]ucessfully complete . . . RDAP . . . during their current commitment." 28 C.F.R. § 550.55(a)(2); *see* 28 C.F.R. § 550.55(c)(1) ("Inmates so approved may receive early release up to twelve months prior to the expiration of the term of incarceration . . . .").

"[T]o receive the benefit of an early release under 18 U.S.C. § 3621(e) for successful completion of the [RDAP], [Petitioner] needs to complete a minimum of 120 days in pre-release placement and participate in community transition services." Finckler Decl. ¶ 5. "If inmates cannot fulfill their community-based treatment obligations by the presumptive

release date, [the BOP] may adjust provisional release dates by the least amount of time necessary to allow inmates to fulfill their treatment obligations." 28 C.F.R. § 550.55(c)(3).

BOP Program Statement 5410.01, *First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)*, explains how the RDAP and time credits earned under the First Step Act interact:

> An inmate must complete all required components of RDAP, including the community-based treatment component, in order to receive the early release benefit pursuant to 18 U.S.C. § 3621(e). The 3621(e) benefit will be applied first to the inmate's sentence computation, followed by the application of [First Step Act time credits], however, an inmate must have sufficient time remaining to serve to complete all required components of the RDAP program (i.e., 120-day community-based treatment).
>
> In the event an inmate has insufficient time remaining to serve after completing the RDAP program to receive both the early release benefit under 3621(e) and the full 365 days toward early release of earned [First Step Act time credits], the number of [First Step Act time credits] . . . applied will be reduced to allow for, at a minimum, the 120-day community-based placement as required under 3621(e).

BOP Program Statement 5330.11, CN-2, *available at* https://www.bop.gov/policy/progstat/5410.01_cn2.pdf.

Recall that Petitioner previously had a projected release date of May 22, 2024, via early release under § 3621(e) for successful completion of the RDAP. There has been no dispute that Petitioner has in excess of the maximum 365 days of time credits under the First Step Act that may be credited towards an earlier transfer to supervised release. *See* 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d)(3). Up until February 2023, however, BOP policy required "the last two consecutive" PATTERN scores to be Low or Minimum for

8

an inmate to apply time credits toward early release under the First Step Act. Resp't's Suppl. Resp., ECF No. 14 at 1-2; Finckler Decl. ¶ 4. Petitioner's first Low PATTERN score was through an assessment in October 2022. Ex. A to Finckler Decl., ECF No. 15-1 at 1.

Even with the change in policy though, the maximum 365 days of time credits under the First Step Act could not be applied because Petitioner still needed to complete the community-treatment-services component of the RDAP program during his "current commitment," otherwise he would be ineligible for early release under § 3621(e). 28 C.F.R. §§ 550.53(a)(3), .55(a)(2), .56(a). Accordingly, following the change in policy and in order to afford Petitioner "the maximum benefit of his § 3621(e) early release incentive and [time credits under the First Step Act]," the BOP "immediate[ly] referr[ed Petitioner] for a community placement." Finckler Decl. ¶ 5. As a result, Petitioner was transferred from the federal prison camp in Duluth to pre-release placement in a residential reentry center on March 2, 2023, and then to home confinement on April 6, 2023. Finckler Decl. ¶ 5; *see also* Ex. B to Finckler Decl., ECF No. 15-2 at 1. Petitioner's present June 29, 2023 release date "affords him one full year off his sentence under § 3621(e) for successful completion of RDAP and 326 days of [time credits under the First Step Act] towards an early release." Finckler Decl. ¶ 7.

### III. ANALYSIS

Because Petitioner's First Step Act time credits have now undisputedly been applied to his sentence through this rather convoluted course of these events, Respondent asserts that this matter is moot and requests that it be dismissed for lack of jurisdiction.

"Article III of the United States Constitution only allows federal courts to adjudicate actual, ongoing cases or controversies." *Potter v. Norwest Mortg., Inc.*, 329 F.3d 608, 611 (8th Cir. 2003); *see* U.S. Const. art. III, § 2. The case-or-controversy requirement exists at all stages of federal judicial proceedings. *Potter*, 329 F.3d at 611. It is of no consequence that a claim was live at an earlier stage in the proceedings; a claim must be live when the court decides the issue. *South Dakota v. Hazen*, 914 F.2d 147, 150 (8th Cir. 1990).

"The 'case or controversy' requirement is not met if 'the question sought to be adjudicated has been mooted by subsequent developments.'" *Roberts v. Norris*, 415 F.3d 816, 819 (8th Cir. 2005) (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)). "When, during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief,' the case is considered moot." *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000) (alteration in original) (quoting *Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994)). If there is no longer an active case or controversy, the action is moot and must be dismissed. *Potter*, 329 F.3d at 611; *see Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005) ("If an issue is moot in the Article III sense, we have no discretion and must dismiss the action for lack of jurisdiction.").

Fundamentally, Petitioner requests that the Court order the BOP to apply his earned First Step Act time credits to his sentence. The BOP has done so. "The Court can no longer grant effective relief[ as Petitioner] ha[s] already received the relief he sought in the Petition." *Pritchard v. Marques*, No. 19-cv-1242 (WMW/BRT), 2019 WL 5023208, at *2 (D. Minn. Aug. 19, 2019), *report and recommendation adopted*, 2019 WL 4957905 (D.

10

Minn. Oct. 8, 2019); *see also, e.g.*, *Craft v. Eischen*, No. 22-cv-1897 (KMM/TNL), 2023 WL 3467231, at *2-3 (D. Minn. Apr. 17, 2023), *report and recommendation accepted*, 2023 WL 345543 (D. Minn. May 15, 2023); *Scheper v. Rios*, No. 19-cv-402 (MJD/ECW), 2020 WL 4060729, at *3 (D. Minn. June 5, 2020), *report and recommendation adopted*, 2020 WL 4059875 (D. Minn. July 20, 2020); *Van Zyverden v. Marques*, No. 19-cv-948 (ECT/LIB), 2020 WL 439908, at *3 (D. Minn. Jan. 8, 2020), *report and recommendation accepted*, 2020 WL 438355 (D. Minn. Jan. 28, 2020).  Thus, the Petition is now moot as "there is no longer any live case or controversy to be resolved in the present case." *Flynn v. Eischen*, No. 22-cv-1265 (ECT/LIB), 2022 WL 18461620, at *6 (D. Minn. Oct. 26, 2022), *report and recommendation accepted*, 2023 WL 415162 (D. Minn. Jan. 25, 2023); *see also, e.g.*, *Craft*, 2023 WL 3467231, at *2; *Van Zyverden*, 2020 WL 439908, at *3; *Pritchard*, 2019 WL 5023208, at *2.

The Court next turns to whether any of the exceptions to the mootness doctrine are applicable in this case notwithstanding the BOP's application of Petitioner's First Step Act time credits to Petitioner's sentence and his transfer to home confinement.  *Sayonkon v. Beniecke*, No. 12-cv-27 (MJD/JJK), 2012 WL 1621149, at *2 (D. Minn. Apr. 17, 2012) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)), *report and recommendation adopted*, 2012 WL 1622545 (D. Minn. May 9, 2012); *see, e.g.*, *Jefferson v. Jett*, No. 15-cv-3308 (PJS/BRT), 2016 WL 4196824, at *2 n.1 (D. Minn. July 1, 2016), *report and recommendation adopted*, 2016 WL 4186943 (D. Minn. Aug. 8, 2016); *Buckles v. Wilson*, No. 14-cv-648 (JRT/HB), 2014 WL 5438495, at *4-5 (D. Minn. Oct. 22, 2014).  A case should not be dismissed as moot if any of the following exceptions apply:

11

> (1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit.

*Sayonkon*, 2012 WL 1621149, at *2 (quotation omitted); *see also Ahmed v. Sessions*, No. 16-cv-2124 (DSD/HB), 2017 WL 3267738, at *3 (D. Minn. July 11, 2017), *report and recommendation adopted*, 2017 WL 3268176 (D. Minn. July 31, 2017). None of these exceptions apply here.

"First, there is no evidence of any cognizable collateral consequences that resulted from [Petitioner] not being released as early as he believed he should have been or related to his requested release." *Alvarado-Ortiz v. FPC Yankton*, No. 22-cv-206 (NEB/ECW), 2022 WL 4358112, at *2 (D. Minn. July 27, 2022), *report and recommendation accepted*, 2022 WL 4357544 (D. Minn. Sept. 20, 2022); *see, e.g.*, *Craft*, 2023 WL 3467231, at *3; *Scheper*, 2020 WL 4060729, at *3.

Second, this case does not involve conduct that is capable of repetition yet evading review. This "exception applies if the matter is too short in duration to be fully litigated before it ends or expires and there is a reasonable expectation that [Petitioner] will be subjected to the same action again." *Scheper*, 2020 WL 4060729, at *3 (alteration in original) (quoting *In re Search Warrants Issued in Connection with Investigation of S. Cent. Career Ctr., W. Plains, Mo.*, 487 F.3d 1190, 1193 (8th Cir. 2007)); *accord Alvarado-Ortiz*, 2022 WL 4358112, at *2. "[T]here is nothing further to litigate because . . . Respondent has represented that [Petitioner] has been moved to home confinement." *Scheper*, 2020 WL 4060729, at *3; *accord Craft*, 2023 WL 3467231, at *3. Moreover,

should Petitioner be taken back into custody, it would be based on a new set of facts and circumstances, such as violating the conditions of his supervision. If Petitioner were brought back into custody, he would be free to bring a new habeas petition based on such new facts and circumstances.

Third, there is no indication that the BOP released Petitioner earlier "simply to avoid judicial review of its prerelease determination or that it is free to reinitiate the challenged conduct once this case is dismissed." *See Jefferson*, 2016 WL 4196824, at *2 n.1. "Respondent has provided insight surrounding [Petitioner's] move to home confinement" and "[t]here is nothing in the record that suggests [Petitioner] was moved to home confinement only to preclude this Court's review." *Scheper*, 2020 WL 4060729, at *3.

Fourth, this case was not brought on behalf of a class of individuals; the claims and relief sought only pertained to Petitioner individually. *See Ahmed*, 2017 WL 3267738, at *3 ("[T]his matter involves a request for relief by an individual detainee on his own behalf, not a request for relief on behalf of a class of individuals.").

Accordingly, the Court concludes that this matter is moot and must be dismissed for lack of jurisdiction. *See, e.g.*, *Craft*, 2023 WL 3467231, at *3; *Scheper*, 2020 WL 4060729, at *4; *Van Zyverden*, 2020 WL 439908, at *3; *Pritchard*, 2019 WL 5023208, at *2.

[Continued on next page.]

## IV. RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, ECF No. 1, be **DENIED AS MOOT**.

2. This matter be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

Date: June  9 , 2023

           *s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Clemons v. Eischen*
Case No. 22-cv-1198 (NEB/TNL)

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).